IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-01990-MSK-KMT

SUNRISE MEDICAL HHG, INC.,

    Plaintiff,

v.

SALLY GIAMPAPA,

    Defendant.
_____

**OPINION AND ORDER GRANTING MOTION TO COMPEL ARBITRATION**
_____

**THIS MATTER** comes before the Court pursuant to the Defendant's Motion to Dismiss **(# 10)**, the Plaintiff's response **(# 11)**, and the Defendant's reply **(# 14)**.

According to the Amended Complaint **(# 29)**,[1] the Plaintiff is a corporation engaged in the manufacture and sale of durable medical equipment. Until May 2007, the Plaintiff employed Defendant Giampapa as a sales representative. To facilitate the performance of her job duties, the Plaintiff supplied Ms. Giampapa with a laptop computer. Under the terms of the Plaintiff's Computer Use Policy, Ms. Giampapa agreed not to transfer, alter, or remove information stored on the laptop computer without authorization from the Plaintiff.

---

[1]The Defendant's Motion to Dismiss was directed at the original Complaint **(# 1)**. After briefing of that motion was completed, the Plaintiff obtained leave **(# 28)** to amend the Complaint and filed an Amended Complaint **(# 29)**. Accordingly, the Court considers the arguments in the Motion to Dismiss only to the extent they remain germane under the Amended Complaint.

1

On or about May 14, 2007, the Plaintiff terminated Ms. Giampapa's employment. At the Plaintiff's request, Ms. Giampapa returned the laptop to the Plaintiff, but before doing so, installed and ran a "wiping utility," designed to permanently remove all programs and data stored on the laptop. The deleted data included customer information and other material of value to the Plaintiff's operations.

The Amended Complaint alleges four causes of action: (i) a civil claim under 18 U.S.C. § 1030(g), in that the Plaintiff "knowingly cause[d] the transmission of a program [or] command" resulting in "damage without authorization to a protected computer"; (ii) a claim for conversion, arising under an unspecified state's common law, in that Ms. Giampapa converted the Plaintiff's ownership of the data stored on the computer; (iii) a claim for trespass to chattels, arising under an unspecified state's common law, based on the same facts; and (iv) a claim for civil theft, apparently asserted pursuant to C.R.S. § 18-4-405, based on the same facts.

Ms. Giampapa filed a Motion to Dismiss **(# 10)**, upon numerous grounds. Specifically, she contends: (i) that the Court lacks jurisdiction over this case, due to an agreement between the parties to arbitrate disputes arising out of her employment; (ii) that the venue of the case in Colorado is improper, given that Ms. Giampapa resides in California, engaged in the act of deleting the data in California, and that the parties' agreement to utilize alternative dispute resolution has a forum selection clause designating California as the appropriate forum; (iii) that the Court lacks subject matter jurisdiction over the federal claim because the Plaintiff cannot allege the requisite intent required by 18 U.S.C. § 1030, and cannot establish that the damages arising from the loss of the data exceed the $5,000 damages threshold necessary to invoke the statute; (iv) that the conversion and trespass to chattels causes of action fail to state a claim

2

because her supervisor allegedly authorized the deletion of the data; and (v) that Ms. Giampapa is entitled to a more definite statement under Fed. R. Civ. P. 12(e) with regard to "the issues of intent and damages."

The Court treats Ms. Giampapa's first argument as a motion to compel arbitration pursuant to 9 U.S.C. § 4. Disputes regarding arbitration are governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.,* which reflects a strong public policy in favor of arbitration. *Gilmer v. Interstate/Johnson Lane Corp*. 500 U.S. 20, 25 (1991). 9 U.S.C. § 3 requires this Court to stay this action pending the outcome of an arbitration proceeding if the issues involved are subject to an agreement to arbitrate. The existence and construction of an agreement to arbitrate merely present matters of contract interpretation for the Court. *Avedon Engineering, Inc. v. Seatex*, 126 F.3d 1279, 1283 (10th Cir. 1997), *citing First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943-45 (1995). The Court must assure itself that the parties actually agreed to arbitrate a particular dispute, but, once that finding is made, doubts as to the scope of the agreement to arbitrate should be resolved in favor of arbitration. *Spahr v. Secco*, 330 F.3d 1266, 1267-70 (10th Cir. 2003).

Ms. Giampapa alleges that the Plaintiff's duty to arbitrate arises from the parties' Alternative Dispute Resolution And At-Will Acknowledgment ("the Agreement"), a copy of which is attached to her motion. The Agreement provides that "any disputes between [Ms. Giampapa] and [the Plaintiff] concerning your employment with the Company . . . and disputes arising from termination of the employment relationship" will "be resolved, if possible, by non-binding mediation," and that "if the dispute is not resolved through mediation, then, upon the

request of [either party], the dispute shall be resolved by final and binding arbitration before a single arbitrator."

The Plaintiff argues that the claims herein "do not relate to the employment relationship." Rather, they contend, the claims "relate to unlawful and tortious actions that Ms. Giampapa took against Sunrise after the employment relationship ended and after all ties between the parties were severed." In essence, then, the Plaintiff apparently does not dispute that the parties had an agreement to arbitrate, but argues that the claims asserted herein do not fall within the terms of the Agreement.

Because there is no apparent dispute between the parties as to the existence or general enforcibility of the Agreement, the sole question presented for the Court is whether the terms of the Agreement encompass the claims asserted herein. Unless the parties' agreement provides otherwise – and the Court finds that it does not – the question of whether the parties have agreed to submit this particular dispute to arbitration is a matter for judicial determination. *Spahr*, 330 F.3d at 1269. As with any contract, the parties' intentions control the interpretation of the terms of the Agreement, but in the absence of any ambiguity, the Court will give effect to the plain language of the Agreement as embodying the parties' intent. *1mage Software, Inc. v. Reynolds and Reynolds Co.*, 459 F.3d 1044, 1055 (10th Cir. 2006).

The Agreement provides for arbitration of "any disputes . . . arising from termination of the employment relationship." The use of the term "any," and the lack of any specific limiting language defining exceptions or exclusions, indicates that the parties agreed that the full panoply of issues that might arise as a result of the Ms. Giampapa's termination would be subject to

4

arbitration. Thus, the only question is whether Ms.Giampapa's act of deleting the laptop's data can be said to "aris[e] from [her] termination."

There is no question that it can. The Amended Complaint alleges that "[a]t the time Sunrise terminated Giampapa's employment, [it] requested that [she] return the Sunrise laptop." Obviously, then, the Plaintiff's demand for return of the laptop was a step that was necessarily connected to and flowed directly from the termination. Similarly, there can be little dispute that the termination led to Ms. Giampapa's decision to delete the data on the laptop. The Court sees little reason why a dispute that is proximately connected, both temporally and causally, to the termination should nevertheless be deemed to fall outside the scope of the Agreement. One can readily envision disputes related to the termination of employment that will not arise until after the termination has been effectuated: *e.g.* disputes as to wages or commissions owed or to the retaliatory nature of a post-termination reference. These disputes are commonly treated by employers as arbitrable.

Moreover, it is evident that the Plaintiff's claims turn, at least in part, on considerations of corporate policies. The Amended Complaint takes pains to point out that Ms. Giampapa's use of the laptop and management of the data thereon, was subject to the Plaintiff's Computer Use Policy, and that her actions in deleting the data were contrary to that policy. Indeed, it would appear that the applicability of the Computer Use Policy is the key element supporting the Plaintiff's claims; without a solid basis for asserting that the data on the laptop belonged to the Plaintiff and not Ms. Giampapa, the vitality of the Plaintiff's claims that Ms. Giampapa "converted" that data would be called into doubt. Where the Plaintiff's claims turn on Ms. Giampapa's (post-termination) compliance with the Computer Use Policy, the Court has no

reservation in finding that the dispute here involves "terms [and] conditions" of employment, and thus, falls squarely within the Agreement. Conceptually, the situation presented here is little different from one in which Ms. Giampapa refused to return the laptop at all; a dispute between the parties as to whether the property was the employer's or the employee's is obviously one arising out of the employment relationship, and one that would fall within the arbitration clause in the Agreement.

The Plaintiff makes an abbreviated argument to the effect that, because Ms. Giampapa's acts occurred after her termination was announced, they fall outside the terms of the Agreement. The Plaintiff does not point to any specific language in the Agreement that would support this argument, perhaps because there is no such language. Moreover, the argument springs from both factual and legal misconceptions. Factually, the Plaintiff argues that Ms. Giampapa's actions occurred "after all ties between the parties were severed." Obviously, this cannot be true, as the parties remained "tied" together in at least one sense as long as Ms. Giampapa held property that the Plaintiff wanted returned. In addition, the argument ignores settled law that arbitration agreements are presumed survive the termination of employment and continue to bind the parties as to post-termination conduct that is connected to obligations under the now-expired agreement. *See e.g. Riley Mfg. Co., Inc. v. Anchor Glass Container Corp.*, 157 F.3d 775, 781 (10th Cir. 1998).

Accordingly, the Court finds that the disputes herein fall within the terms of the parties' agreement to arbitrate disputes. Other than arguing that the dispute is not arbitrable, the Plaintiff has raised no contentions that would prevent arbitration of this matter. Thus, Ms. Giampapa's Motion to Dismiss **(# 10)**, insofar as the Court construes it as a motion seeking to compel

6

arbitration, is **GRANTED**. The parties shall proceed to arbitrate their dispute according to the provisions of the Agreement. Pursuant to 9 U.S.C. § 3, this action is **STAYED** in all respects pending the outcome of the arbitration. For administrative purposes, the Clerk of the Court shall close this case, subject to reopening upon the motion of either party for such further orders as may be necessary to effectuate the ruling herein.

Dated this 13th day of August, 2008

                                              **BY THE COURT:**

                                              Marcia S. Krieger
                                              United States District Judge